# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00602-COA

**LEONARD MAYHALL A/K/A LEONARD L. MAYHALL**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT: 03/07/2018
TRIAL JUDGE: HON. JAMES LAMAR ROBERTS JR.
COURT FROM WHICH APPEALED: ITAWAMBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: LEONARD MAYHALL (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: KATY T. GERBER
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED: 01/29/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, C.J., WILSON AND WESTBROOKS, JJ.**

**GRIFFIS, C.J., FOR THE COURT:**

¶1.    Leonard Mayhall appeals the circuit court's denial of his petition for post-conviction collateral relief (PCCR).  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    In June 2007, Mayhall pleaded guilty to the charge of sexual battery and was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years suspended, followed by five years' post-release supervision. After serving five years in MDOC custody, Mayhall was released and placed on post-release supervision.

¶3. On September 21, 2013, Mayhall was arrested and charged with indecent exposure. Thereafter, the State filed a petition to revoke his post-release supervision. Following a revocation hearing on October 8, 2013, Mayhall was found to be in violation of the terms and conditions of his post-release supervision, and his post-release supervision was revoked. Mayhall was sentenced to serve fifteen years in the custody of the MDOC. Mayhall was never indicted on or convicted of indecent exposure.

¶4. Mayhall subsequently filed a pro se "petition seeking writ of habeas corpus" and contested his revocation. Mayhall argued that because he was never indicted on or convicted of indecent exposure, his post-release supervision was unlawfully revoked. The circuit court treated the petition as a petition for PCCR and denied the petition on March 7, 2018. Thereafter, on April 23, 2018, Mayhall filed his notice of appeal.

ANALYSIS

*I.      Timeliness of the Appeal*

¶5. Before we address the denial of Mayhall's petition for PCCR, we must first determine whether his appeal was timely filed. We conduct a de novo review of issues of law. *Lyons v. Epps*, 8 So. 3d 916, 917 (¶3) (Miss. Ct. App. 2009).

¶6. Mississippi Rule of Appellate Procedure 2(a)(1) provides for a mandatory dismissal of an appeal if the notice of appeal was not timely filed pursuant to Mississippi Rules of Appellate Procedure 4 or 5. Under Rule 4(a), the notice of appeal:

> shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from. If a notice of appeal is

2

mistakenly filed in the Supreme Court, the clerk of the Supreme Court shall note on it the date on which it was received and transmit it to the clerk of the trial court and it shall be deemed filed in the trial court on the date so noted.

M.R.A.P. 4(a).

¶7. The order denying Mayhall's petition for PCCR was filed March 7, 2018. Mayhall filed his notice of appeal with the supreme court on April 23, 2018. Thus, Mayhall failed to file his notice of appeal within thirty days of the circuit court's adverse order. Because Mayhall failed to timely file his notice of appeal pursuant to Rule 4(a), it appears his appeal should be dismissed under Rule 2(a)(1).

¶8. "However, Mississippi Rule of Appellate Procedure 2(c) allows this Court to suspend the thirty-day requirement of Rule 4(a) for good cause shown." *Moore v. State*, 8 So. 3d 262, 264 (¶9) (Miss. Ct. App. 2009). "[T]he appellate courts . . . have the authority to grant a criminal defendant [an out-of-time] appeal if failure to perfect the appeal was through no fault of his own and if justice demands." *Id*. (internal quotation marks omitted).

¶9. Mayhall asserts he did not receive a copy of the circuit court order denying his petition for PCCR until March 23, 2018, and filed his notice of appeal "on the first day available through the [South Mississippi Correctional Institute (SMCI)] Inmate Legal Assistance Program . . . ." Thus, the record shows Mayhall intended to appeal and worked with the SMCI Inmate Legal Assistance Program to perfect his appeal. Mayhall submitted his notice of appeal on April 19, 2018, which, according to Mayhall, was the first day available through the program. The notice of appeal was filed April 23, 2018, within thirty days of the date

3

Mayhall asserted he received the circuit court's order.

¶10. Mayhall has shown good cause why this Court should suspend the thirty-day requirement under Rule 4(a) and allow him to appeal out-of-time. Accordingly, we now address the merits of his appeal.

## II. Denial of the Petition for PCCR

¶11. We review a circuit court's denial or dismissal of a PCCR motion for abuse of discretion. *Wallace v. State*, 180 So. 3d 767, 769 (¶7) (Miss. Ct. App. 2015). However, questions of law are reviewed de novo. *Id.*

¶12. Mayhall claims that because he was never indicted on or convicted of the indecent-exposure charge, the revocation of his post-release supervision was unlawful. However, "[a] probationer does not have to be convicted of a crime to be in violation of his probation but, rather, probation may be revoked when it is more likely than not that a violation has occurred." *McCalpin v. State*, 166 So. 3d 24, 26-27 (¶7) (Miss. 2013).

¶13. The record shows a revocation hearing was held during which the victim, Ashton Cayson, testified in detail regarding the incident. Specifically, Cayson testified as follows:

| State: | There have been allegations about something occurring on September 21st, 2013. Did you see [Mayhall] on that day? |
|---|---|
| Cayson: | I did. |
| State: | Did you know [Mayhall] before this time? |
| Cayson: | I didn't. |
| State: | Okay. What was the occasion of your seeing him? |

4

Cayson:     Do you want me to tell you what happened?

State:      Yes, ma'am.

Cayson:     I was fishing at Beans Ferry alone by myself. Mr. Mayhall walked up behind me, started a conversation about fishing. I was telling him - showing him my fish. Put the fish back down. I continued to fish. He stood about 20 feet behind me up on top of the gravel parking lot. I felt like somebody was watching me, so I looked behind me, and he had been standing there for probably about ten minutes, and I got uncomfortable. So I got my poles, I put it in my car. I called my mother. When I was on the phone with my mother, he started walking towards me with - and he started pulling his pants down and unzipping them and pulling his penis out and showing it to me. I told momma I would call her back. I called 911 immediately. Got in my car. As I was in my car, he was still following my car with his privates out shaking them at me. And I pulled around and waited for the police.

State:      Did the police arrive while you were still there?

Cayson:     Um-hmm. They found him walking through the woods I think.

State:      Okay. And he was arrested. Did he say anything to you during that time?

Cayson:     While he was arrested?

State:      No, before. When he was exposing himself, was he saying anything?

Cayson:     He was whispering something while I was on the phone with my mother and I asked, I said what? And he said never mind and just grabbed hisself.

State:      Okay. As far as you know, had you ever met him before this time?

Cayson:     No, never seen him.

| | |
|---|---|
| State: | I guess today is the only other time you've ever seen him? |
| Cayson: | Um-hmm. |
| State: | Did you see the police arrest him that day? |
| Cayson: | I did. |

¶14.    Mayhall was given the opportunity to question Cayson but declined.  Instead, Mayhall simply stated that he "was about 300 feet away from [Cayson] [at] all time[s]."  In response, Cayson testified as follows:

| | |
|---|---|
| State: | How far away from you was [Mayhall] when this happened? |
| Cayson: | When he started? |
| State: | Yes, ma'am. |
| Cayson: | About 20 feet behind me.  I was on the bottom by the water, and there's a gravel parking lot on top, and he was standing there. |
| State: | Did he get closer to you than that? |
| Cayson: | He was walking towards my car close to me when I was on the phone with my mom and 911. |
| State: | Okay. |
| Cayson: | That's why I freaked out and went and got my fishing pole, because I didn't know what he was going to do. |

¶15.    We find sufficient evidence was presented to show that a violation "more likely than not" occurred.  Neither an indictment nor a conviction was required to establish that Mayhall violated his post-release supervision.  *Id.*  Thus, his post-release supervision was lawfully revoked.  We therefore affirm the circuit court judgment.

6

¶16. **AFFIRMED.**

**BARNES AND CARLTON, P.JJ., WILSON, GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**